UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

KIMBERLY DUNN,

Plaintiff,

v.

BATES TECHNICAL COLLEGE, LIN ZHOU,

Defendants.

CASE NO. 3:21-cv-05582-RAJ-BAT

**REPORT AND RECOMMENDATION**

Defendants Bates Technical College ("Bates") and Lin Zhou ("Dean Zhou"), (collectively "Bates"), move for summary judgment dismissal of Plaintiff Kimberly Dunn's state and Title VII federal claims asserting discrimination, retaliation, and harassment. Dkt. 15. The Court recommends Defendants' Motion for Summary Judgment (Dkt. 15) be granted.

FACTS

Plaintiff was hired by Bates on October 2, 2017, as a Child Studies Instructor. Bates' primary campus is in Tacoma, Washington but Child Studies Instructors also work with groups outside of the City of Tacoma. Dkt. 16, Declaration of Vlad Samoylenko Decl., Ex. 1, Child Studies Instructor Job Description (00000856-859). The position is on a tenure track. Bates is required to either grant or deny tenure within three years of full-time employment. *Id.*, Ex. 2, Bates Bylaws and Policies at 51 (00000535). During the three-year process, the tenure track employee is subject to oversight by a Tenure Review Committee (TRC) of faculty members who make a recommendation to the board regarding the employee's tenure. *Id.*, Ex. 3, Bates Bylaws

and Policies at 26 (00000510). Plaintiff was one of several individuals going through the tenure process. Dkt. 17, Garth Ahearn Declaration, Ex. A (Deposition of Kimberly Dunn, ("Dunn Dep."), Vol. 1. at 128-129.

A. Quarterly Review

As part of the tenure process, Plaintiff underwent a series of quarterly reviews. Her first quarterly meeting review rated her as meeting expectations except for two items that were not observed. Dkt. 16, Declaration of Vlad Samoylenko Decl., Ex. 4, Quarterly Meeting Record (06120001). Plaintiff's second quarterly meeting was on February 5, 2018. *Id*. Ex. 5, Quarterly Meeting Record (06140001-2). Plaintiff was noted as meeting expectations in areas including being responsive to feed back; needed improvement in several other areas about being on time, being prepared, and displaying professionalism for the job through punctuality. *Id*. It was concluded she was showing satisfactory progress toward completing the training. *Id*.

On March 2, 2018, Plaintiff wrote to members of the committee asking for copies of directors' evaluations used "to substantiate her performance." *Id*., Ex. 6, Emails dated March 6, 2018 (00000639-640). Ms. Stone, the tenure committee chair, explained there was no formal survey but a check-in by email or telephone for feedback. *Id*. As stated in the email to Plaintiff, the email check-ins to the directors asked several questions regarding Plaintiff's work including whether she was punctual. Most of the responses were positive but one director noted initial issues with attendance and punctuality for scheduled meetings. The director also noted these issues were improving. *Id*. Ex. 7, Emails dated January 31 - February 5, 2018 (00000615-622). On March 6, 2018, Plaintiff sent an email to Ms. Stone regarding the feedback in her Review, asking for specific examples regarding some of the feedback. *Id*., Ex. 8, Emails dated March 6-8, 2018 (00000637-640).

Around this time, Ms. Stone's daughter applied for the position occupied by Plaintiff. Dkt. 17, Ahearn Decl. Ex. A, Dep. of Dunn, Vol. I at 99. Ms. Stone stepped down from the committee and was replaced by Jason Carrol as committee chair. *Id*., Ex. 9, Winter Quarterly Meeting with TRC (May 9, 2018) (001353). Plaintiff felt Ms. Stone should be removed from the committee due to "nepotism." Dkt. 17, Ahearn Decl., Ex. A, Dep. of Dunn, Vol. 1. at 99.

Plaintiff's next review occurred on May 9, 2018. Plaintiff was again rated as meeting expectations in several areas but she also needed to continue working on being punctual and to improve on preparing reports in a timely manner. Dkt. 16, Samoylenko Decl., Ex. 10, Quarterly Meeting Record dated May 9, 2018 (06150001-3). The committee concluded Plaintiff was showing improvement and met the duties of the position. *Id*.

B. Document Tracking Attendance and Punctuality

In early August of 2018, Plaintiff found a copy of a document that appeared to track her tardiness at various meetings and other work-related events. The document covers the period from when Plaintiff began her employment until June 30, 2018. Dkt. 16, Samoylenko Decl., Ex. 11, Attendance Tracking (Bates Nos. 00000630-631). Plaintiff wrote to Brandon Rogers raising concerns about the tenure process. *Id*. Ex. 12, Emails between Plaintiff and Brandon Rogers (00000725-727). Plaintiff expressed her frustration about the process and indicated she felt her race played a factor in her experience at Bates. She mentioned a time when she was asked by a team member to rearrange furniture in a classroom.

Plaintiff also filed a complaint with the Washington State Human Rights Commission ("WSHRC"). *Id*., Ex. 13, WSHRC Complaint (No. 00000601-602). The complaint outlined several issues she felt were discriminatory, retaliatory, and/or hostile at Bates. In an addendum to the intake questionnaire, Plaintiff outlined in greater detail the basis for her complaint, including:

(1) she was asked by a fellow employee about a computer station believed to be missing; (2) she was not allowed to represent the college on a OPEP Committee; (3) she found a document outlining times it was perceived she was late; (4) she was the subject of a joke about her hair ("[you [sic] wig looks like] is it made of dog hair" by an unnamed staff member; (5) after she made a mistake on which workshop she was scheduled to run, an unnamed staff member "joke[d]" about her competency "you can't possibly run the treasurer workshop!"; and (6) she heard second hand that a former faculty head did not want to hire her. Dkt. 26, Second Declaration of Ahearn, Ex. B, Dep. of Dunn, Ex. 3.

On August 17, 2018, the TRC conducted another review of Plaintiff. Dkt. 16, Samoylenko Decl., Ex. 14, Quarterly Meeting, Review of Dunn (001357-1359). Plaintiff was noted to be meeting or exceeding in all observed areas of performance. However, in the comments section a person wrote, "To address Department concerns, we recommended Kimberly be 10 to 15 minutes early for her Appointments……" The review also noted she was provided with student feedback which was required once a year. *Id*. Additionally, the tenure track summary noted that she "delivers quality instruction and works with coop sites to develop instruction…." *Id*., Ex. 15, Tenure Track Summary and Recommendations (001423-1425).

Four days after the tenure meeting, Mr. Rogers responded to Plaintiff's August 15, 2018 email. Dkt. 16, Samoylenko Decl., Ex. 12 (00000725-727). He provided several resources and noted if she liked to request an investigation she could reach out to human resources. He stated Plaintiff was not required to respond to any reported issue regarding absenteeism, but it was his expectation she would be punctual. He noted she needed to adjust her time sheet to address some input errors and that he was working on bringing in a facilitator. Approximately two months later, on October 16, 2018, Plaintiff sent a letter to Brandon Rogers regarding the

notes found on the copier. *Id*., Ex. 16, Letter from Plaintiff to Bates (00000633-635). In the letter she describes her side of the story regarding allegations of tardiness. *Id*.

C. Co-Worker Objections to August Tenure Summary

On October 28, 2018, Cindy Morris, a Child Studies instructor, wrote a letter to the Bates Board of Trustees objecting to the August 17, 2018, tenure summary. Dkt. 16, Samoylenko Decl., Ex. 17, Letter dated October 28, 2018 (00000643). Ms. Morris stated Plaintiff did not take feedback well, did not work cooperatively with others, and lacked professionalism regarding being punctual. A handwritten note signed by Jason Carroll, Tenure Chair, states: "As stated in previous conversations statements 1 and 2 have not been sufficiently backed up by the Supervisor and it is my belief that these statements as a whole should not be part of the tenure record." *Id*.

D. Filing of Complaint With Human Resources

On December 4, 2018, Plaintiff filed a complaint with Bates' Human Resource Department. Dkt. 16, Samoylenko Decl., Ex. 18, Bates Technical College Human Resources Report Form. (00000593-596). Plaintiff claimed she was being discriminated against because of her race and ethnicity. Her complaints included: (1) Ms. Stone being her tenure chair; (2) a team member asking a day care director several times during a meeting whether Plaintiff was late; (3) a verbal warning from Brandon Rogers about being late after complaining she was being discriminated against; (4) being asked at a tenure committee meeting to sign a document regarding her punctuality, lack of cooperation working with coworkers among other things; and (5) "unsubstantiated" comments written in her tenure review. *Id*.

E. Reprimand

On December 5, 2019, Plaintiff received notice of a "pre-disciplinary meeting for

employee misconduct." Dkt. 16, Samoylenko Decl., Ex. 19, Retaliation and Ongoing Harassment Due to Investigation (00000713). In a letter dated December 17, 2019, Plaintiff outlined her "Complaint #3" to Christina Nelson of Bates Human Resources. According to Plaintiff, she was accused of failing to attend a meeting with the Early Childhood Teacher Preparation Council by Tiffany Williams, a coworker. Plaintiff claimed she had been sick and had sick leave. Ms. Williams confronted her with a Facebook video taken the day of the conference where Ms. Dunn was seen singing at a church event. *Id.* Plaintiff was accused of promoting her song on Bates' time. Plaintiff explained she used the time to speak bout mental health and suicidal ideations and was having a spiritual/religious experience. *Id*.

On December 17, 2019, Plaintiff filed another complaint describing what she believed to be unethical practices regarding credit hours given to Bates' students. Dkt. 16, Samoylenko Decl., Ex. 20, December 17, 2019 Complaint re: Unethical Practices (00000711-712). She claimed that due to raising these issues, she was ostracized and faced character defamation.

Ultimately, Bates did not renew Plaintiff's contract and she left Bates in the spring of 2020.

Plaintiff's evidence in support of her opposition consists of the following:

1) EEOC Right to Sue Letter dated September 21, 2021, on EEOC Charge No. 38G-2019-00263.

2) Notice of Commission Action from WSHRC dated August 16, 2018 on EEOC Charge No. 38G-2019-00263. The Notice references Final Commission Action Finding but the finding has not been provided to the Court.

3) Whistleblower Complaint filed by Plaintiff in August, 2019 and rejected on September 5, 2019.

4) June 9, 2020 Letter from L&I regarding Plaintiff's complaint for unpaid wages for 2/12/2020 to 06/01/2020.

Dkt. 19, Declaration of Vicky J. Currie, Exhibits A through D.

## DISCUSSION

### A. Summary Judgment Standard

Summary judgment is proper if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party must initially demonstrate the absence of any genuine issue of material fact for trial, *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986), after which the burden shifts to the opposing party to identify specific material facts that are genuinely disputed, *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 248-49 (1986).

Courts assessing a summary judgment motion view the facts and draw reasonable inferences in favor of the non-movant. *Scott v. Harris*, 550 U.S. 372, 378 (2007). A factual dispute must be genuine and not "blatantly contradicted by the record, so that no reasonable jury could believe it." *Id*. at 380. Mere assertions in legal papers cannot create a genuine dispute. *S.A. Empresa de Viacao Aerea Rio Grandense (Varig Airlines) v. Walter Kidde & Co.*, 690 F.2d 1235, 1238 (9th Cir. 1982). There must be evidence on which the jury could reasonably rely to find for the non-movant. *Liberty Lobby*, 477 U.S. at 252.

### B. Title VII Claims Against Dean Zhou

Bates argues all claims should be dismissed against Dean Zhou because individual supervisors and managers are not subject to liability under Title VII. Plaintiff cites to *Edelman v. Source Healthcare Analytic*, 265 F. Supp. 3d 534 (2017) for the proposition that a manager acting in the interest of the employer may be subject to liability under Title VII. However, *Edelman* concerned FMLA violations, not Title VII claims. Moreover, the Ninth Circuit has ruled individuals may not be sued for damages under Title VII. *See Miller v. Maxwell's Int'l, Inc*., 991 F.2d 583, 587-88 (9th Cir. 1993). In *Miller*, the court reasoned Congress limited

liability under Title VII to employers with 15 or more employees because it "did not want to burden small entities with the costs associated with litigating discrimination claims." *Id*. It was therefore "inconceivable" Congress intended to allow individual employees to be sued under Title VII. *Id*.; *see also*, *Walsh v. Nevada Dep't of Human Resources*, 471 F.3d 1033, 1037 (9th Cir. 2006).

Plaintiff has failed to show the Title VII claims against Dean Zhou should not be dismissed. The Court recommends granting the motion for summary judgment on these claims.

C. <u>State Law Claims – Failure to File Tort Claim</u>

All claims against the state, its agencies, or its officers and employees arising out of tortious conduct must be presented to the office of risk management, which is deemed to have occurred. RCW 4.92.110. No action subject to these claim filing requirements may be initiated against the State, its officers, or employees until sixty days after the claim described in RCW 4.92.100 is filed. RCW 4.92.110. Dismissal is the proper remedy for failure to comply with tort claim filing requirements. *Hyde v. University of Washington Medical Center*, 186 Wn. App. 926, 929 (2015). "Filing a tort claim after commencing suit does not remedy this jurisdictional defect. See *Jones v. University of Washington*, 62 Wn. App. 653, 662 (1991) ("*claim filing condition precedent* serves the reasonable purpose of fostering negotiation and settlement without substantially burdening tort claimants.")

According to Douglas Green of the Department of Enterprise Services, there is no record that Plaintiff filed a tort claim prior to filing suit. Dkt. 18, Declaration of Douglas Green, at ¶ 3. Plaintiff does not allege in her Complaint she filed a tort claim and does not deny she failed to file a tort claim. Dkt. 19. Instead, she suggests Bates failed to provide her with a claim form and argues therefore, Bates waived the defense. Plaintiff relies on RCW 4.96.020, which applies to

local governments. Plaintiff's arguments are without merit.

Plaintiff provides no evidence that Bates prevented her from filing a tort claim form with the State. RCW 4.96.020 does not apply as Bates is not a local entity. Because Bates is a technical college, RCW 4.92.110 applies[1] and it clearly states where a tort form is available. A tort claim form is available at File a Tort Claim | Department of Enterprise Services (DES) (wa.gov). The page provides instructions on how to file a tort claim with the State of Washington.

Even assuming Bates was required to provide a form to Plaintiff, there is no evidence she requested and was refused one, or that Bates hid the form or otherwise kept her from obtaining the form. Plaintiff's argument lacks merit as she has provided no evidence in support. The Court also notes Plaintiff is represented by counsel who has previously sued the State. *See Love v. State Dep't of Corrections*, 193 Wash. App. 1049 (2016).

Bates raised the defense in its Answer and therefore, did not waive the defense. *See* Dkt. 10. Bates was neither dilatory in raising the defense nor acted inconsistently in raising the defense. *See*, *e.g.*, *Lybbert v.Grant Cty*., 141 Wash. 2d 29, 35, 1 P.3d 1124 (2000) (Conducting discovery regarding Plaintiff's other claims does not amount to waiver.)

Plaintiff's last day of work at Bates was in the spring of 2020. Thus, it has been more than 300 days for any claims that may have arisen since August 2018 and the Spring of 2020. The Court recommends granting Bates' motion for summary judgment on Plaintiff's federal law claims regarding incidents alleged to have occurred after August of 2018 based on Plaintiff's failure to comply with Washington's tort claim filing requirements.

---

[1] As a technical college, Bates is an integral part of the state's system of higher education. *See Centralia College Education Ass'n, et al. v. Board of Trustees of Community College Dist. No. 12*, 82 Wash. 2d 128 (1973).

D. Plaintiff's Title VII Allegations Regarding Discrete Conduct After August 2018

Under Title VII of the Civil Rights Act of 1964, a charge must be filed with the EEOC within 180 days of the unlawful employment practice, or within 300 days if the aggrieved individual has initially instituted proceedings with a state or local agency. 42 U.S.C. § 2000e-5(e)(1). "If the EEOC does not bring suit based on the charge, the EEOC must 'notify the person aggrieved' that she can file suit. The notice is accomplished through a right-to-sue letter. Once a person receives an EEOC right-to-sue letter, she has 90 days to file suit." *Surrell v. California Water Serv. Co*., 518 F.3d 1097, 1104 (9th Cir. 2008) (citing 42 U.S.C. § 2000e-5(f)(1)); *Nelmida v. Shelly Eurocars, Inc*., 112 F.3d 380 (9th Cir. 1997). Alternatively, the aggrieved individual has 180 days to file suit after the receipt if the individual filed the complaint with a state agency.

Plaintiff filed her EEOC/Washington State Human Rights Commission ("WSHRC") complaint concerning incidents alleged to have occurred prior to the middle of August 2018. There is no record Plaintiff filed a complaint with the EEOC or WSHRC for any discrete acts of discrimination or retaliation alleged to have occurred after that time. In her response, Plaintiff claims "she filed a complaint with the EEOC in June of 2021" and refers to a Right to Sue Letter attached as Exhibit A to the Supplemental Declaration of Vicky J. Currie, Dkt. 19-1. However, the documents attached as Exhibits A and B to counsel's declaration relate to EEOC Charge #38G-2019-00263 for the August 16, 2018 Complaint. Likewise, the August 27, 2021 Right to Sue Letter relates to the August 16, 2018 Complaint. *Id.*, Exs. A. and B.

A plaintiff must exhaust the administrative process because it "afford[s] the agency an opportunity to investigate the charge." *B.K.B. v. Maui Police Dep't*, 276 F.3d 1091, 1099, 1100 (9th Cir. 2002) ("Allegations of discrimination not included in the plaintiff's administrative

charge may not be considered by a federal court unless the new claims are like or reasonably related to the allegations contained in the EEOC charge.") Plaintiff points to the 2019 reprimand and that she did not make tenure in 2020 as new charges, but there is no evidence from which this Court can reasonably conclude the post August 2018 allegations are like or sufficiently related to the August 2018 complaint.

Based on the foregoing, the Court recommends granting Bates' motion for summary judgment on claims of alleged misconduct after August 2018, including any Title VII claims relating to the 2019 reprimand and Bates' decision to not renew Plaintiff's contract.

E. Title VII Disparate Treatment

Disparate treatment claims are subject to the burden-shifting analysis of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). The analysis has three steps. The employee must first establish a prima facie case of discrimination. If she does, the employer must articulate a legitimate, nondiscriminatory reason for the challenged action. Finally, if the employer satisfies this burden, the employee must show that the "reason is pretextual 'either directly by persuading the court that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence.'" *Chuang v. Univ. of Cal. Davis*, 225 F.3d 1115, 1123–24 (9th Cir. 2000) (quoting *Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 256 (1981)).

To establish a prima facie case of disparate treatment discrimination under Title VII a plaintiff must show that: "(1) she belongs to a protected class; (2) she was qualified for her position; (3) she was subject to an adverse employment action; and (4) similarly situated individuals outside her protected class were treated more favorably." *Davis v. Team Elec. Co.*, 520 F.3d 1080, 1089 (9th Cir. 2008); *see also Nicholson v. Hyannis Air Serv., Inc.*, 580 F.3d

1116, 1123 (9th Cir. 2009). Plaintiff argues the *McDonnell Douglas* test does not apply here because discrimination has been established by the direct evidence that she was subjected to a joke about her hair. Dkt. 19, pp. 5-6. As discussed below, Plaintiff has provided no evidence to support this claim.

Bates does not contest elements 1 and 2 of a *prima facie* claim are satisfied. However, Bates contends Plaintiff has failed to establish she suffered an adverse employment action or that she was treated differently than similarly situated employees. The Court agrees. Plaintiff makes conclusory statements about discrete issues that occurred after her August 2018 complaint but fails to directly address any of the issues raised in Defendants' opening brief regarding incidents alleged to have occurred prior to August 2018. While a court can no longer view a party's failure to address an issue as a concession that an argument has merit, Plaintiff still has the burden of producing evidence that establishes a question of fact. She has failed to do so here.

An adverse employment action is one that "materially affect[s] the compensation, terms, conditions, or privileges of … employment." *Chuang*, 225 F.3d at 1126; *see also Kang v. U. Lim Am., Inc.*, 296 F.3d 810, 818-19 (9th Cir. 2002). An adverse employment action must be a "significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a change in benefits." *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 761 (1998). The definition of adverse employment action does not extend to rude or offensive comments or mere ostracism. *See Kortan v. Cal. Youth Auth.*, 217 F.3d 1104, 1112–13 (9th Cir. 2000) (the plaintiff did not suffer an adverse employment action when she was repeatedly mocked and treated with hostility). As noted by the Supreme Court, "Title VII … does not set forth a general civility code for the American workplace." *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006).

In her August 2018 complaint, Plaintiff claimed (a) she did not get along with a number of her co-workers; (2) was asked about a lost computer; (3) had her tenure chair seek feedback about her work; (4) was accused of being tardy; (5) was asked to fix her time sheet; (6) was unable to join a committee; (7) heard second hand someone said they did not want to hire her; (8) was asked to sign a document during a tenure meeting months after she filed her complaint in August of 2018; (9) some unnamed individual made a joke about her running a work shop; and (10); some unnamed individual made a joke about her hair. Dkt. 26, Second Declaration of Ahearn, Ex. B, Dep. of Dunn, Vol. 1, Ex. 3.

Plaintiff provides no evidence to establish these complaints, much less that any of these incidents caused a significant change in her employment status or were due to discriminatory animus. Instead, her counsel argues: (i) "Bates employees made fun of the Plaintiff's hair;" (ii) Plaintiff was not granted tenure in 2020 even though she was meeting or exceeding all performance areas in 2018; and (iii) Plaintiff was given a reprimand in the fall of 2019 shortly after she filed a whistleblower complaint. Dkt. 19 at 6-7.

(i) Comment About Hair

Plaintiff argues the hair comment is evidence of direct discrimination. However, Plaintiff provides no evidence of who made the remark, the context of the remark, or the circumstances. Plaintiff provided no declaration in support of her response. Instead, the Court has reviewed the addendum to Plaintiff's August 2018 complaint to the WSHRC. There, Plaintiff states some unknown coworker noted that her wig (although the word wig is crossed out) looked like dog hair. Her counsel argues the remark was made by unnamed "Bates employees." While "[a] single discriminatory comment by a plaintiff's … decisionmaker is sufficient to preclude summary judgment for the employer" (*see Davis v. Team Elec. Co.*, 520 F.3d 1080, 1092 (9th

Cir. 2008); *Dominguez–Curry v. Nevada Trans. Dep't*, 424 F.3d 1027, 1039 (9th Cir. 2005)), there is no evidence a decisionmaker at Bates made a comment about Plaintiff's hair. There is also insufficient evidence of the circumstances surrounding the alleged comment so the Court is unable to fairly discern whether the "joke" was race-based. Also, a one-time comment is simply not enough to render a work environment objectively abusive. While the joke about her hair, if it was in fact made, may not have been appropriate, the statement by itself is not evidence Plaintiff was subjected to a discrete act of discrimination.

(ii) Tenure and 2018 Reviews

Counsel next argues it is clear Plaintiff was subject to an adverse employment action because she was not granted tenure even though she was meeting or exceeding performance "per the August 17, 2018 TRC review." Dkt. 19 at 7.

The Court cannot infer causation between an August 2018 review and her failure to make tenure in 2020. While courts may infer causation based on the "proximity in time between the protected action and the allegedly retaliatory employment decision," *Yartzoff v. Thomas*, 809 F.2d 1371, 1376 (9th Cir. 1987)), such an inference is not possible here. *See Clark Cty. Sch. Dist. V. Breeden*, 532 U.S. 268, 273 (2001) (per curiam) (a court may not infer causation from temporal proximity unless the time between an employer's knowledge of protected activity and an adverse employment action is "very close" and citing cases for the proposition that a three-month and four-month time lapse is insufficient to infer causation).

Bates also notes the reviews for tenure are part of a three-year process. Thus, the reviews from 2017 until the time Plaintiff filed her complaint with the WSHRC in 2018 were not sufficiently final and lasting to amount to an adverse act even if Plaintiff disagrees with them. Plaintiff also cannot show the evaluations were false or that issues with Plaintiff's punctuality

adversely affected Plaintiff's reviews. Rogers specifically indicated to Plaintiff her punctuality would not be considered by the committee and when the issue was raised again after Plaintiff filed her WSHRC complaint, her tenure chair noted that her attendance would not be considered as part of the tenure process.

(iii) Whistleblower Complaint

Plaintiff's counsel next argues Plaintiff was reprimanded shortly after she filed a whistleblower complaint and therefore, Plaintiff was discriminated against. As previously noted, Plaintiff was investigated and reprimanded after she was seen and videotaped singing at an unrelated church event when she was scheduled to be at a work meeting and claimed she had taken sick leave that day. Dkt. 16, Samoylenko Decl., Ex. 19, Retaliation and Ongoing Harassment Due to Investigation (00000713). According to Plaintiff, she first received notice of a "pre-disciplinary meeting for employee misconduct" on December 5, 2019. Dkt. 16-2, Ex. 19 at 31. On December 17, 2019, Plaintiff filed a complaint about what she believed to be unethical practices regarding credit hours given to students at Bates. Dkt. 16, Samoylenko Decl., Ex. 20, December 17, 2019 Complaint re: Unethical Practices (00000711-712). Dkt. 1 at p. 6. Thus, notice of the pre-disciplinary meeting predated her complaint.

Plaintiff complained to the WSHRC about her tenure reviews from 2017 until August 2018. While an underserved negative performance review can constitute an adverse employment decision, none of the reviews Plaintiff received prior to filing her complaint rise to the level of a negative performance review or an adverse employment action. Plaintiff does not argue otherwise but instead points to the whistleblower complaint she filed in 2019 claiming her reprimand and tenure denial were retaliatory. Plaintiff has provided no evidence, however, that any decision-maker regarding the reprimand and tenure denial were aware she had filed a

whistleblower complaint.

(b) Similarly Situated Individuals Outside Protected Class

Plaintiff provides no evidence that similarly situated individuals outside her protected class were treated more favorably.

Plaintiff has failed to submit evidence sufficient to raise an issue of material fact as to whether she was subject to an adverse employment action and that similarly situated individuals outside her protected class were treated more favorably. Thus, Plaintiff has failed to meet her burden establishing a *prima facie* case of disparate treatment and it is recommended Bates' motion for summary judgment be granted on this claim.

F. Retaliation

In a Title VII retaliation case, plaintiff must show that the alleged retaliatory act "might well have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Burlington N.*, 548 U.S. at 68. However, "petty slights, minor annoyances, and simple lack of good manners will not [suffice to state a Title VII retaliation claim]." *Id.* at 68; *see also Brooks v. City of San Mateo*, 229 F.3d 917, 928 (9th Cir. 2000) ("[O]nly non-trivial employment actions ... will constitute actionable retaliation."). Examples of adverse employment actions include "termination, dissemination of a negative employment reference, issuance of an undeserved negative performance review and refusal to consider for promotion." *Brooks*, 229 F.3d at 928. By contrast, an employee badmouthing an employee outside the job reference context does not constitute an adverse employment action. *See Nunez v. City of Los Angeles*, 147 F.3d 867, 875 (9th Cir. 1998) (badmouthing). Ostracism suffered at the hands of coworkers cannot constitute an adverse employment action. *See Strother v. So. California Permanente Medical Group*, 79 F.3d 859, 869 (9th Cir. 1996).

Plaintiff infers her reprimand and tenure denial were retaliatory because of the whistleblower complaint she filed in 2019. However, as previously discussed, Title VII does not address whistleblower complaints regarding issues that are not related to racial discrimination; there is no evidence that any decision-maker regarding those two decisions were aware she had filed a whistleblower complaint; and a court may not infer causation from temporal proximity unless the time between an employer's knowledge of protected activity and an adverse employment action is "very close" *See Clark Cty. Sch. Dist. v. Breeden*, 532 U.S. 268, 273 (2001) (per curiam) (citing cases for the proposition that a three-month and four-month time lapse is insufficient to infer causation).

G.    Hostile Work Environment Based on Race

A hostile work environment is one where "the workplace is permeated with discriminatory intimidation, ridicule, and insult ... that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment ...." *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993) (internal citations omitted) (internal quotation marks omitted), *abrogated on other grounds by Burlington Indus.*, 524 U.S. 742.

To pursue a hostile work environment claim pursuant to Title VII, an "objectionable environment must be both objectively and subjectively offensive, one that a reasonable person would find hostile or abusive, and one that the victim in fact did perceive to be so." *Faragher v. City of Boca Raton*, 524 U.S. 775, 787 (1998) (citing *Harris*, 510 U.S. at 21–22; *see also McGinest v. GTE Service Corp.*, 360 F.3d 1103, 1113. (9th Cir. 2004). The "prohibition [in Title VII against discrimination on the basis of race] encompasses the creation of a hostile work environment." *McGinest*, 360 F.3d at 1113. To determine if an environment is hostile or abusive,

the court must look at all of the circumstances of the case. *Harris*, 510 U.S. at 23.

The court "may [examine] the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance. The effect on the employee's psychological well-being..." is relevant. *Id*. If a hostile work environment has been created, Title VII has been violated. *Id*. at 21–23. Harassment is actionable only if it is "sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Harris*, 510 U.S. at 21. It must be both objectively and subjectively offensive. *See Faragher*, 524 U.S. at 787.

Here, even crediting Plaintiff's description of the nature of her treatment, it is not, without more, sufficiently pervasive or serious to objectively constitute racially based harassment. As a threshold matter, Plaintiff has provided no evidence that she was subject to an overtly racist joke or statement. Even assuming she was, a onetime statement does not constitute harassment that is "sufficiently continuous and concerted in order to be deemed pervasive." *EEOC v. Prospect Airport Services, Inc*., 621 F.3d 991, 1000 (9th Cir. 2010) (A Title VII violation "is not established merely by evidence showing sporadic use of abusive language, gender-related jokes and occasional teasing.").

Finally, Plaintiff has failed to establish a question of fact regarding whether she was subject to a hostile work environment because of her race. A hostile work environment because of race must be objectively and subjectively offensive. The circumstances in the record establish, at best, that Plaintiff did not get along with her co-workers and there were disagreements regarding her attendance and some other matters. This is not evidence of a hostile and abusive environment due to race. The only event which can be inferred to be about her race is the

comment about her hair. Even assuming the comment was in fact, race-based and not a poor joke, a onetime comment is not enough to render her work environment objectively abusive.

Plaintiff has failed to provide evidence to establish a question of material fact as to whether she was subjected to a hostile work environment due to her race.

SUMMARY

All Title VII claims against Dean Zhou should be dismissed as individuals are not subject to personal liability under Title VII. All state law claims should be dismissed because Plaintiff failed to file a tort claim prior to filing suit. All federal claims relating to incidents alleged to have occurred after Plaintiff filed her complaint with the WSHRC in August of 2018 should be dismissed because she failed to file a complaint with the EEOC or WSHRC relating to those incidents. Plaintiff's claim for Title VII discrimination based on incidents outlined in her 2018 WSHRC Complaint fails because she cannot show she was subject to disparate treatment based on any protected status and fails to show any legitimate business decisions made by Bates regarding her during that time were pre-textual. Plaintiff's claim for retaliation based on the matters alleged in her 2018 WSHRC Complaint also fails because she was not subject to an adverse employment action. Plaintiff's claim for hostile work environment fails because she cannot show she was subject to severe and pervasive racial harassment that altered the terms or conditions of her employment.

OBJECTIONS AND APPEAL

This Report and Recommendation is not an appealable order. Therefore, a notice of appeal seeking review in the Court of Appeals for the Ninth Circuit should not be filed until the assigned District Judge enters a judgment in the case. Objections, however, may be filed and served upon all parties no later than **June 21, 2023**. The Clerk should note the matter for **June**

**23, 2023**, as ready for the District Judge's consideration if no objection is filed. If objections are filed, any response is due within 14 days after being served with the objections. A party filing an objection must note the matter for the Court's consideration 14 days from the date the objection is filed and served. The matter will then be ready for the Court's consideration on the date the response is due. Objections and responses shall not exceed six (6) pages. The failure to timely object may affect the right to appeal.

DATED this 7th day of June, 2023.

BRIAN A. TSUCHIDA
United States Magistrate Judge